IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| LAWRENCE MENDTE | : | NO. 08-417 |

MEMORANDUM

McLaughlin, J.  March 25, 2010

Lawrence Mendte, a newscaster at KYW, pled guilty on August 22, 2008, pursuant to a plea agreement, to an information charging him with one count of violating 18 U.S.C. §§ 1030(a)(2)(C) and 1030(c)(2)(B) by breaking into the private e-mail accounts of Alycia Lane, another newscaster at KYW. He was sentenced on November 24, 2008, to three years probation, a $5,000 fine, and a $100 special assessment. Two conditions of probation were that the defendant spend six months in home confinement with electronic monitoring and perform 250 hours of community service.

After Mr. Mendte served his six months of home confinement and completed his community service, he filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in which he seeks specific performance of an alleged agreement by the government to charge him with a misdemeanor, instead of a felony, or, in the alternative, the vacating of his sentence and underlying guilty plea.

The government has filed a motion to dismiss the motion on the ground that the defendant signed a plea agreement in which he expressly waived all rights to appeal or to collaterally attack his conviction, sentence, or any other matter relating to the prosecution. The language of the plea agreement is clear as to its purpose and effect to bind Mr. Mendte and the government to its provisions. The language from paragraph 10 of the plea agreement states that Mr. Mendte waived his right to appeal his conviction or sentence, subject to specific exceptions that are not present here, and that he waived his right to collaterally attack his conviction and sentence by way of a § 2255 motion (or otherwise).[1]

---

[1] Paragraph 10: In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

    a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

        (1)    the defendant's sentence on any count of conviction exceeds the statutory maximum for

The United States Court of Appeals for the Third Circuit has held that a collateral waiver provision contained in a plea agreement is enforceable if it (1) was knowing and voluntary, and (2) does not work a miscarriage of justice. <u>United States v. Mabry</u>, 536 F.3d 231, 237 (3d Cir. 2008). This waiver is enforceable unless Mr. Mendte establishes that his waiver was not knowing or voluntary or that upholding the waiver would constitute a "miscarriage of justice."

---

<pre>
                    that count as set forth in paragraph 6 above;
        (2)         the sentencing judge erroneously departed
                    upward pursuant to the Sentencing Guidelines;

        (3)         the sentencing judge, exercising the Court's
                    discretion pursuant to United States v.
                    Booker, 543 U.S. 220 (2005), imposed an
                    unreasonable sentence above the final
                    Sentencing Guideline range determined by the
                    Court; and/or
</pre>

If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

The defendant also waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

I.   The Plea Colloquy

The Court conducted a detailed plea colloquy with the defendant who was under oath. Early in the colloquy, the Court questioned Mr. Mendte about his relationship with his counsel.

> THE COURT:  And have you retained Mr. Schwartz, who's seated next to you as your counsel?
>
> MR. MENDTE:  I have, Your Honor.
>
> THE COURT:  Have you had a sufficient opportunity to discuss your case with Mr. Schwartz?
>
> MR. MENDTE:  Yes, I have, Your Honor.
>
> THE COURT:  Are you satisfied with Mr. Schwartz's representation of you?
>
> MR. MENDTE:  I am, Your Honor.

Hr'g Tr. 6:23-7:6, Aug. 22, 2008.

After an oral recitation of the essential terms of the plea agreement by the government to which the defendant agreed, id. at 11:10-12:13, the Court asked to see the signed plea agreement and questioned the defendant about it.

> THE COURT: Mr. Mendte, I'm looking at a document that has the caption of your case on it, and it's entitled "guilty plea agreement." It is six pages. On the sixth page there are four signatures, one of which appears to be yours as well as the signature of Mr. Schwartz, Ms. Hoffa and Mr. Levy from the United States Attorney's Office. Sir, is that your signature?
>
> MR. MENDTE: Yes, it is.
>
> THE COURT: And therefore, did you sign this document?
>
> MR. MENDTE: Yes, I did.
>
> THE COURT: Did you read it before you signed it?

4

MR. MENDTE: I did, Your Honor.

THE COURT: Did you speak with Mr. Schwartz about it?

MR. MENDTE: Absolutely.

THE COURT: Did you understand it and do you understand it?

MR. MENDTE: Yes, Your Honor.

THE COURT: Do you have any questions for the Court about it?

MR. MENDTE: No.

THE COURT: Is this the guilty plea agreement that you've entered into with the Government?

MR. MENDTE: It is, Your Honor.

THE COURT: All right. Now, attached to it is a two-page document called "attachment acknowledgment of rights." On the second page there are two signatures, one of which appears to be yours. Did you sign this document, sir?

MR. MENDTE: I did, Your Honor.

THE COURT: And did you read it before you signed it?

MR. MENDTE: Yes, I did.

THE COURT: Did you understand it and do you understand it?

MR. MENDTE: Yes, I do.

THE COURT: Do you have any questions for the Court about it?

MR. MENDTE: No, I don't.

THE COURT: Did you talk with Mr. Schwartz about it?

MR. MENDTE: I did, Your Honor.

> THE COURT: Mr. Mendte, has anyone made any threat or any promise or assurance to you of any kind other than what is set forth in the plea agreement to convince or induce you to sign it?
>
> MR. MENDTE: No, Your Honor.

Id. at 13:5-14:24.

The Court asked the defendant specifically about the collateral waiver provision.

> THE COURT: Let me just go over for a moment to be sure you understand that you are waiving all rights to appeal your conviction or your sentence or any other aspect of this prosecution or collaterally attack it, except in the following situations. If the Government were to appeal the sentence that I impose, then you could file a direct appeal of your sentence; do you understand that?
>
> MR. MENDTE: I understand.
>
> THE COURT: If the Government does not appeal, you could still file a direct appeal of your sentence but you could only raise the following claims. That your sentence exceeded the statutory maximum for the charge, and there's the one count in this case; or two, that the sentencing judge, that I erroneously departed upward pursuant to the sentencing guidelines; or three, that in exercising my discretion I imposed an unreasonable sentence above the final sentencing guideline range that I determine to be appropriate. Do you understand, sir, that they're the only rights you will have to appeal or to attack your conviction?
>
> MR. MENDTE: I understand.
>
> THE COURT: All right, sir. Sir, do you understand that if you do plead guilty and if I accept your plea, you will waive, by that I mean give up forever, your right to a further trial of any kind, as well as all the other rights that I've just explained to you that you have?
>
> MR. MENDTE: I do understand, Your Honor.

* * *

>THE COURT: Do you understand that by pleading guilty and by waiving the rights that I have discussed with you, you cannot later come to any Court and claim that you were not guilty or that your rights have been violated?
>
>MR. MENDTE: I do, Your Honor.

Id. at 19:18-20:18, 30:18-22.

As part of the factual basis of the plea, the government stated the following. From January to May of 2008, the defendant accessed the personal email accounts of Alycia Lane, a fellow newscaster at KYW, more than 500 times without authorization. The defendant continued to access Ms. Lane's email accounts after she was arrested in New York and was fired from KYW. The defendant read communications between Ms. Lane and her attorney regarding the criminal case and leaked that information to the press. It was the government's contention that the leaking of the attorney-client communications was an attempt to undermine Ms. Lane's efforts to achieve a favorable disposition of the criminal case in New York. Id. at 22:11-25:20. After the government's recitation of the facts, the following colloquy took place between the Court and the defendant:

>THE COURT: Mr. Mendte, did you hear what Mr. Levy just said?
>
>MR. MENDTE: I did.

7

> THE COURT: Sir, to your knowledge, is everything he said accurate and correct?
>
> MR. MENDTE: Yes.
>
> THE COURT: Is anything he said to your knowledge inaccurate or incorrect?
>
> MR. MENDTE: No.

Id. at 25:22-26:4. The defendant also agreed that the more elaborate factual description in the government's change of plea memorandum was accurate. Id. at 26:5-22.

## II. Discussion

The first question is whether the defendant has shown that his waiver was not knowing or voluntary. The defendant has not even tried to do so. The defendant does not assert that he did not understand that he was giving up the right to appeal or to file a § 2255 motion. The defendant contends that he was deprived of the effective assistance of counsel in the negotiation of his guilty plea. He does not assert that anything defective about his counsel's representation prevented him from understanding his plea. Rather, he is arguing that his lawyer failed to negotiate a better plea -- to a misdemeanor instead of to a felony -- or to attempt an alternate strategy. The waiver, therefore, was knowing and voluntary.

The second question is whether enforcement of the collateral waiver provision would work a miscarriage of justice.

8

The Court of Appeals has set forth several factors to consider when determining whether the enforcement of an otherwise proper waiver would work a miscarriage of justice. These factors include "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." United States v. Khattack, 273 F.3d 557, 563 (3d Cir. 2001) (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001); Mabry, 536 F.3d at 242-43. The same standard applies to waivers of appeals and waivers of collateral review. See, e.g., United States v. Gwinnett, 483 F.3d 200, 202, 203-206 (3d Cir. 2007) (appeal); Mabry, 536 F.3d at 236-37 (collateral review).

The defendant contends that, prior to his guilty plea, the government agreed to let him plead to a misdemeanor but then reneged on the plea agreement. First of all, that allegation is refuted by paragraph 12 of the plea agreement and the plea colloquy.[2] The defendant said under oath and in his plea agreement that there were no other agreements. See Hr'g Tr. 14:1-24. In addition, both counsel stated during the colloquy

---

[2] Paragraph 12: It is agreed that the parties' guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements or understandings will be entered into unless in writing and signed by all parties.

9

that there was no other plea agreement except the one disclosed on the record.  Id. at 31:11-15.

Secondly, even if the allegation were true, the defendant's argument that his counsel was ineffective in dealing with this situation is without merit.[3]  If the defendant had not agreed to plead to an information, the government no doubt would have presented the case to a grand jury and sought an indictment containing many more counts.  The defendant admitted during the plea colloquy that he had accessed Ms. Lane's email without authorization more than 500 times.  The defendant may then have moved to dismiss the indictment because the government reneged on an earlier plea deal but that would have been a very risky strategy.

The Court is presented with a defendant who pled guilty to one felony count and waived the ability to collaterally attack his conviction after being fully informed of his rights and the import of the waiver.  He told the Court under oath that he understood everything and was satisfied with his lawyer.  He said that there were no other agreements with the government and that he understood that he could never come to any court and claim that his rights were violated.  He was sentenced to a term of

---

[3]   The government denies that there was any agreement to allow the defendant to plead to a misdemeanor and states that the defendant's former counsel would also deny it.  Gov't's M. to Enforce Waiver 11 n.6.  Because the Court will not conduct an evidentiary hearing, it does not rely on these statements.

10

probation that included a term of home confinement that was completed when he filed the instant motion. He has never said that he is innocent or that he would not have pled guilty and would have insisted on a trial.

Enforcement of the waiver would not work a miscarriage of justice in this case.

An appropriate order follows separately.